**Certiorari Denied, October 10, 2012, No. 33,814**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-117**

**Filing Date: August 17, 2012**

**Docket No. 30,092**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**DAVID RAMOS-ARENAS,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Lisa C. Schultz, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Judge.**

**{1}** Defendant David Ramos-Arenas appeals from his convictions for one count of false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963), and two counts of impersonating a peace officer in violation of NMSA 1978, Section 30-27-2.1 (1999). The central issue in this case is whether a federal border patrol agent is a "peace officer" within the meaning of Section 30-27-2.1. We agree with the district court that the statutory definition of "peace officer" includes the impersonation of federal officials, and we affirm on that issue. We also conclude that the district court did not abuse its discretion in denying Defendant's motion for mistrial based on prosecutorial misconduct. Finally, finding no error in the district court's other rulings, we affirm Defendant's convictions.

**BACKGROUND**

**{2}** Defendant was charged with two counts of impersonating a peace officer arising out of separate incidents in which he pretended to be a United States border patrol agent. Officer George Bernal, a New Mexico State Police Officer, testified that on February 24, 2008, he stopped a vehicle in which Defendant was a passenger. Because the driver was cooperative and admitted that she had been speeding, the officer decided to issue her a citation with a lower penalty assessment. While the officer was speaking with the driver, Defendant told the officer that he was a border patrol agent and that he worked in San Diego. The officer asked for Defendant's credentials—his badge and identification—but Defendant said that he did not have them with him and that he had left them at home. Although he did not have his credentials, based on the fact that Defendant "was a fellow law enforcement officer" and because the driver was cooperative, the officer decided to "go ahead and just make this a written warning."

**{3}** On March 11, 2008, Defendant again impersonated a border patrol agent. Lucy Jimenez, a victim's advocate with the Las Cruces District Attorney's Office, testified that on that date, she was driving back to her office in the late morning after dropping off a client, when she noticed a truck in her rear-view mirror moving toward her. As she reached an intersection, the truck accelerated past Jimenez and blocked her car from moving. Defendant, who was wearing a green border patrol shirt and a silver badge on his belt, got out of the truck and approached Jimenez's vehicle. Jimenez lowered her window two to three inches. Defendant told Jimenez that she had broken the law by "transporting illegal aliens" and asked for her identification. Jimenez put her district attorney identification up to the window, and Defendant then asked for Jimenez's driver's license. Jimenez became concerned because she did not see a name tag on Defendant's shirt, so she asked for his identification. Defendant responded by asking again for her driver's license and tapped on the window, telling

Jimenez to put the window down.  Defendant told Jimenez that he could "take [her] in and . . . call others to come and they would take [her] in."  After Jimenez told Defendant that she had to call her boss, the district attorney, Defendant returned to his truck and backed out of the way, allowing Jimenez to leave.

**{4}**  Prior to trial, Defendant filed a motion to dismiss pursuant to Rule 5-601(B) NMRA.  He argued that the United States Border Patrol is a subdivision of the United States Immigration and Customs Enforcement division of the federal Department of Homeland Security and that the statutory definition of a peace officer is limited to New Mexico state officials and officers.  The district court denied Defendant's motion, and the case proceeded to trial.  Defendant raised the issue again at the close of trial and tendered a jury instruction that read in part that in order to convict him for the crime of impersonating a peace officer, the jury had to find that Defendant "pretended to be an officer of the State of New Mexico or any of its political subdivisions."  The district court rejected the proposed instruction, and Defendant was convicted by a jury on all counts.

## DISCUSSION

**{5}**  On appeal, we first address Defendant's argument that the district court erred in failing to dismiss the two counts of impersonating a peace officer in violation of Section 30-27-2.1.  Next, we consider Defendant's contention that he should have been granted a mistrial due to prosecutorial misconduct based on a statement the prosecutor made in his closing argument.  Finally, we resolve the other issues raised by Defendant.

### Section 30-27-2.1 Applies to the Impersonation of Federal Officers

**{6}**  "We review questions of statutory interpretation de novo."  *State v. Moya*, 2007-NMSC-027, ¶ 2, 141 N.M. 817, 161 P.3d 862 (internal quotation marks and citation omitted).  When interpreting a statute, our primary goal is to determine and give effect to the Legislature's intent.  *Id.* ¶ 6.  In doing so, we first look "to the words the Legislature chose and the plain meaning of the language."  *Id.*  "The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary."  *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994).  We will "apply the plain meaning of the statute unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity, or contradiction, in which case the statute is to be construed according to its obvious spirit or reason."  *State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (internal

quotation marks and citation omitted).  We strictly construe penal statutes and "will not extend punishment to cases not plainly within the statutory language used." *State v. Littlefield*, 2008-NMCA-109, ¶ 8, 144 N.M. 655, 190 P.3d 1150 (alteration, internal quotation marks, and citation omitted).  However, "[a] court should not hobble statutory interpretation with the requirement that every circumstance meant to be covered must be specifically mentioned in the statute."  *Ogden*, 118 N.M. at 244, 880 P.2d at 855.

**{7}**	Defendant argues that the Legislature limited the definition of "peace officer" to New Mexico state officials and officers and that it did not intend for the statute to include the impersonation of federal agents.  Thus, Defendant contends, the charges against him for impersonating a federal border patrol agent should have been dismissed.  The State asserts that the plain language of Section 30-27-2.1 evinces a legislative intent to protect New Mexicans from the misuse of *any* appearance of authority to maintain order or make arrests.  For the following reasons, we agree with the State.  We begin with the text of the statute.

**{8}**	Section 30-27-2.1(A), (C), provides, in relevant part,

> A.	Impersonating a peace officer consists of:
>
>> (1)	without due authority exercising or attempting to exercise the functions of a peace officer; or
>>
>> (2)	pretending to be a peace officer with the intent to deceive another person.
>>
>> . . . .
>
> C.	As used in this section, "peace officer" means *any public official or public officer* vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes.

(Emphasis added.)

**{9}**	As we have noted, Defendant argues that the definition of "peace officer" is limited by the Legislature's use of the term "public officer."  "Public officer" is uniformly defined for purposes of the Criminal Code as "any elected or appointed officer *of the state or any of its political subdivisions*[.]"  NMSA 1978, § 30-1-12(I)

4

(1963) (emphasis added). Thus, Defendant asserts, the definition of "public officer" refers only to New Mexico state actors. The State does not take issue with Defendant's definition of "public officer." However, the State points out that unlike the uniform definition of "public officer," no such definition exists for "public official." It argues that the term should, therefore, be interpreted in a way that reflects legislative intent and according to its ordinary meaning. *See Ogden*, 118 N.M. at 242, 880 P.2d at 853 (stating that words are to be given their ordinary meaning unless the Legislature indicates otherwise).

**{10}** When interpreting a statute, we must interpret it "in its entirety, so that each part of the statute is given meaning and no part is superfluous." *Moya*, 2007-NMSC-027, ¶ 9; *State v. Javier M.*, 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1. Section 30-27-2.1(C) defines "peace officer" as "any public official *or* public officer." (Emphasis added.) *See* § 30-1-12(C); UJI 14-2216 NMRA. "As a rule of construction, the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." *Diamond v. Diamond*, 2012-NMSC-022, ¶ 27, ___ P.3d ___ (internal quotation marks and citation omitted). Here, the use of the disjunctive between "public official" and "public officer" makes clear that a "peace officer" is not limited only to those defined as "public officers" under Section 30-2-12(I). With this guidance, we look to the ordinary meaning of "public official" to determine if the term is limited to state officers.

**{11}** The ordinary meaning of a public official is "[o]ne who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." *Black's Law Dictionary* 1195 (9th ed. 2009). Accordingly, "public official" has a broader meaning than "public officer." Further, it is clear that the power to carry out some portion of the state's sovereign powers includes the power to maintain order or make arrests. *See* § 30-27-2.1(C) (providing that a "peace officer" is one who is "vested by law with a duty to maintain public order or to make arrests for crime"). By giving "public official" its ordinary meaning and recognizing its distinction from a "public officer," we avoid a redundant result that would otherwise be rendered mere surplusage. *See Moya*, 2007-NMSC-027, ¶ 9; *Javier M.*, 2001-NMSC-030, ¶ 32. Consequently, based on the plain language of the statute, the terms "public official" and "public officer" are not synonymous, and the definition of "public official" is not limited to "any elected or appointed officer of the state or any of its political subdivisions." And because border patrol agents are vested with the authority to maintain order and make arrests, Defendant's impersonation of a border patrol agent falls within the conduct proscribed by the statute. *See* § 30-27-2.1.

**{12}** Our conclusion here is consistent with at least one other court's interpretation of a similar legislative provision. In *Rice v. State*, 195 S.W.3d 876, 878 (Tex. Ct. App. 2006), the defendant appealed his conviction of impersonating a public servant and possession of cocaine. In that case, a Texas state trooper had pulled the defendant over for unregistered license plates. *Id.* The defendant, who was wearing a department of corrections uniform with a patch that read "State of Louisiana," told the officer that he worked for the department of corrections and that he had been to Texas to pick up a prisoner. *Id.* at 879. The officer sensed that "something was not right" and, after additional backup arrived, found cocaine in the trunk of the car. *Id.* On appeal, the defendant conceded that he had held himself out as "an official of the [s]tate of Louisiana" but argued that the Texas penal code (code) prohibiting such conduct applies only when the person represents that he is an official of the state of Texas. *Id.* at 881 (internal quotation marks omitted). Under the Texas code, a person commits an offense if he "impersonates a public servant." *Id.* (internal quotation marks and citation omitted). The code defines a "public servant" as "an officer, employee, or agent of government[,]" and "[g]overnment" means "the state." *Id.* (internal quotation marks and citations omitted). Noting that the code does not define "the state," the Texas appellate court looked to the legislature's purpose in enacting the legislation. *Id.* The primary purpose of the code, the court stated, was clear: "[T]he general public should not be placed at risk of submitting to the pretended authority of an individual impersonating an agent of a 'government unit,' regardless of whether the individual is impersonating a Texas officer, employee, or agent or a Louisiana officer, employee, or agent." *Id.* Consequently, the scope of the code was not limited only to individuals impersonating officers of the state of Texas, and the defendant's conviction was upheld. *Id.* at 881-82.

**{13}** The Texas court's interpretation of its penal code comports with our understanding of the legislative purpose behind Section 30-27-2.1. The principal objective of our statutory provision is to protect the public from being harmed or deceived into believing a person is a peace officer and has the authority to act in an official capacity, when in fact, there is no such authority to do so. *See* § 30-27-2.1; *see also Moya*, 2007-NMSC-027, ¶ 16 (stating that the "language of penal statutes should be given a reasonable or common sense construction consonant with the objects of the legislation, and the evils sought to be overcome should be given special attention" (internal quotation marks and citation omitted)). Moreover, to construe the statute as Defendant suggests would lead to an absurd result. Accordingly, we conclude that Section 30-27-2.1 is not limited to only those persons impersonating public officials of the State of New Mexico but includes impersonating public officials of other states and the federal government. The district court properly

denied Defendant's Rule 5-601(B) motion to dismiss and correctly refused Defendant's tendered jury instruction as an incorrect statement of the law.

**The District Court Did Not Abuse Its Discretion When It Denied Defendant's Motion for Mistrial**

**{14}** Defendant argues that a statement made by the State in its closing argument amounted to prosecutorial misconduct and that the district court erred in denying his motion for mistrial. During the course of the trial, Defendant's employer and others testified that Defendant told them he had previously been enrolled in the Border Patrol Academy (Academy) and that he left due to the death of his father or a death in the family. In fact, Defendant was withdrawn from the Academy due to inappropriate conduct. At the end of his closing argument, the prosecutor discussed Defendant's credibility and, in particular, Defendant's claims that he left the Academy because of the death of his father, stating,

> [R]ationalization is something important to [Defendant], he can rationalize the death of his father to get a job. The death of his father. He could have said, "No, I left it because my ankle was hurting in the Border Patrol. My knee got hurt . . ." He had to kill his father. He had to say because of his father's death. "My father's death [led] me to leave." This is a person who will rationalize.

After the prosecutor concluded his closing and before the jury retired, defense counsel asked to approach the bench and moved for a mistrial on the ground's that prosecutor's comment, "[h]e had to kill his father," was said only to inflame the jury. The court denied the motion.

**{15}** On appeal Defendant argues that the prosecutor's comments in his closing argument created a prejudicial effect on the jury's verdict and deprived him of his constitutional rights to due process and a fair trial. He asserts specifically that "the jury could have convicted him because it thought he was a bad person who deserved to be punished." Thus, Defendant argues, the only remedy for the prosecutorial misconduct was a mistrial, and the district court abused its discretion in denying the motion.

**{16}** Where the error is preserved, "[w]e review a [district] court's denial of a motion for mistrial on the basis of remarks made in closing argument for an abuse of discretion." *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516; *State v. Reynolds*, 111 N.M. 263, 266, 804 P.2d 1082, 1085 (Ct. App. 1990) ("Because the

7

[district] judge's observations of the proceedings are such a critical factor in determining whether the fairness of the trial will be affected, appellate courts review such rulings only for abuse of discretion."). Our task is to determine "whether the relative weight of the error meets the threshold required to reverse a conviction." *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. Although the State contends that Defendant's objection was not timely, and thus not preserved, the result here would be the same regardless of whether we review under an abuse of discretion or fundamental error standard. For this reason, we assume without deciding that Defendant's objection was timely and review the district court's denial of his motion for mistrial for an abuse of discretion. "Because [district] judges are in the best position to assess the impact of any questionable comment, we afford them broad discretion in managing closing argument." *Id.* ¶ 25. We will find that a district court has abused its discretion when it acted in an "obviously erroneous, arbitrary, or unwarranted manner." *Fry*, 2006-NMSC-001, ¶ 50 (internal quotation marks and citation omitted).

**{17}** The question on appeal is whether Defendant was deprived of a fair trial by the prosecutor's statement, "[h]e killed his father." *See id.* To answer this question, "we review the comment in context with the closing argument as a whole . . . so that we may gain a full understanding of the comments and their potential effect on the jury." *Id.* (internal quotation marks and citation omitted). "[T]he general rule is that an isolated comment made during closing argument is not sufficient to warrant reversal." *Sosa*, 2009-NMSC-056, ¶ 29 (internal quotation marks and citation omitted). Our review of the transcripts establishes that the prosecutor's comment that Defendant "killed his father" was isolated. Put in context, it is evident that the prosecutor was attacking Defendant's credibility and that he was doing so by reminding the jury that Defendant had lied about why he left the border patrol academy. The prosecutor's choice of phrasing could have been better. However, attorneys are afforded "reasonable latitude in their closing statements," and rebuttal in particular is responsive and "not always capable of the precision that goes into prepared remarks." *Id.* ¶¶ 24-25. Given this latitude, the context in which the statement was made, and the evidence of guilt offered against Defendant, we cannot see a substantial likelihood that the statement prejudiced the jury so as to deny him a fair trial. The district court did not abuse its discretion in denying Defendant's motion for mistrial.

**There Is No Showing of Prosecutorial Vindictiveness; Defendant's Double Jeopardy Rights Were Not Violated; and Defendant's Objection to an In-Court Identification Was Not Preserved**

**{18}** Prior to trial at issue here, Defendant had been tried in both state and federal court on charges arising out of the same conduct. In the first state case, Defendant was tried on the charge of impersonating an officer with regard to the March 11, 2008 incident. That trial ended in a mistrial. In the federal case, Defendant was tried and convicted for the February 24, 2008 incident. *See United States v. Ramos-Arenas*, 596 F.3d 783 (10th Cir. 2010). Before he was re-tried in state court, the State amended the criminal information to include a second count for impersonating a peace officer based on the February 24, 2008 incident.

**{19}** Defendant argues that the amendment of the criminal information to include the count based on the February 24, 2008 incident was a result of prosecutorial vindictiveness. He also contends that being charged in state court for the February 24, 2008 incident after he had already been convicted for it in federal court violated his right to be free from double jeopardy. He raised these issues in a pretrial motion to dismiss and argues that the district court erred in denying that motion. We address each of these points in turn.

**{20}** A defendant's claim of prosecutorial vindictiveness presents a mixed question of fact and law. *State v. Brule*, 1999-NMSC-026, ¶ 6, 127 N.M. 368, 981 P.2d 782. Here, the facts are not in dispute, so our review is purely de novo. *See id.* "Our focus in analyzing a claim of prosecutorial vindictiveness is on whether the prosecutor has done an act that would not have occurred but for hostility or punitive animus toward the defendant *because [the defendant] exercised a specific legal right.*" *Id.* ¶ 10 (alteration, internal quotation marks, and citation omitted). As the basis for Defendant's claim, Defendant asserts that the prosecutor amended the criminal information because the prosecutor failed to obtain a conviction against defendant in his first trial in state court. Defendant does not identify a specific legal right that he exercised nor does he argue that the prosecutor's amendment to the criminal information was in response to the exercise of a specific legal right. Defendant has not established the basis for a claim of prosecutorial vindictiveness, and the district court's denial of his motion was proper.

**{21}** Defendant also contends that the district court erred in refusing to dismiss the February 24, 2008 charge because it was added to the criminal information after he had been convicted in federal court for that crime. This, he asserts, violated his right to be free from double jeopardy. It is well established that where a defendant's conduct constitutes "a criminal offense within the geographical authority of more than one sovereign, each sovereign may prosecute regardless of what the other has done." *State v. Glascock*, 2008-NMCA-006, ¶ 24, 143 N.M. 328, 176 P.3d 317 (internal quotation marks and citation omitted). This is true where, as here,

9

Defendant was prosecuted for the violation of both state and federal law. *See id.* ¶¶ 23-25. Defendant's right to be free from double jeopardy was not violated by the addition of the charge and his convictions in both the federal and state courts.

**{22}** Finally, we address Defendant's argument that the district court erred when it denied his motion to suppress a witness's photo identification of him prior to the first trial. Defendant now claims that the admission of the witness's identification of him at his second trial was reversible error. However, Defendant concedes that he did not renew his motion to exclude the witness's in-court identification at his second trial, nor did he object at trial when the witness identified him in court. Defendant failed to preserve this argument for appeal, and we do not consider it here. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280; *State v. Balenquah*, 2009-NMCA-055, ¶ 18, 146 N.M. 267, 208 P.3d 912.

## CONCLUSION

**{23}** For the reasons set forth above, we affirm Defendant's convictions.

**{24}** **IT IS SO ORDERED.**


_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**


_____

**CYNTHIA A. FRY, Judge**

**Topic Index for *State v. Ramos-Arenas*, No. 30,092**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Double Jeopardy
Due Process

**CRIMINAL LAW**
False Imprisonment
Impersonating an Officer

**CRIMINAL PROCEDURE**
Closing Argument
Double Jeopardy
Mistrial

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction