This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41160

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PATRICK MEADOWS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Patrick Meadows was convicted by a jury of two counts of aggravated battery with a deadly weapon for stabbing two men, Coleman Mohon and Bobby Richards (collectively, Victims), contrary to NMSA 1978, Section 30-3-5(C) (1969). He appeals his convictions arguing that the State committed a *Brady* violation in failing to disclose the existence of photographs that were lost, and that the district court erred in failing to grant his motion for a mistrial. We affirm.

**BACKGROUND**

**{2}** Mr. Mohon testified that on April 8, 2020, he was sitting on his front porch with his friend, Mr. Richards, smoking a cigarette and drinking beer. At some point, according to Mr. Mohon, a pickup truck drove by and its occupants were yelling obscenities out of the truck's window. Mr. Mohon thought he heard the truck stop just past his house so he walked toward the street and popped his head around his parked camper to see what was going on. At that point, Mr. Mohon testified that he saw Defendant and asked if he was okay because he thought the people in the truck might have been harassing him. Defendant told Mr. Mohon to shut up and mind his own business. When Mr. Mohon turned around and began walking back to his house, he then saw Mr. Richards get up and start walking towards him.

**{3}** Mr. Mohon turned back towards Defendant—at this point, he testified that he thought Defendant had shoved him to the ground but he realized he had actually been stabbed by Defendant. Once Mr. Mohon hit the ground, he testified that he saw Defendant and Mr. Richards fighting, both punching each other. Mr. Mohon saw the knife and realized that Defendant was stabbing Mr. Richards. Mr. Mohon's wife came out of their home and he told her to call 911. Mr. Mohon testified that he saw Mr. Richards fall to the ground and he also saw Defendant turn around and continue walking northbound down the street. Victims both went to the hospital and were treated for stab wounds—Mr. Mohon had one stab wound and Mr. Richards had four or five stab wounds.

**DISCUSSION**

**I.** *Brady* **Violation**

**{4}** Defendant argues that the State committed a *Brady* violation by failing to disclose the fact that law enforcement officers took photographs of him following his altercation with Victims and that the photographs were later lost. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring prosecution to disclose evidence in its possession that could be favorable to a defendant); *see generally Case v. Hatch*, 2008-NMSC-024, ¶¶ 44-47, 144 N.M. 20, 183 P.3d 905 (discussing the standards applicable to a *Brady* claim in New Mexico). According to Defendant, the State knew the photographs existed but it failed to disclose their existence to the defense before trial. The photographs, Defendant argues, would have aided his theory of self-defense "and might have been exculpatory or had impeachment value."

**{5}** The State responds that there can be no *Brady* violation in this case because the lost photographs were not exculpatory. Specifically, the State asserts that Defendant merely contends that the photographs *may* have been exculpatory rather than definitively asserting so, as required by *Brady*. *See Case*, 2008-NMSC-024, ¶ 55 ("For *Brady* purposes, exculpatory evidence cannot be purely speculative."). According to the State, "There is no support in the record for a finding that the photographs, if preserved,

would have held any exculpatory value or altered the outcome of the proceedings." We agree with the State.

**{6}** During cross-examination, Sergeant Smith testified about his interaction with Defendant following the altercation. Sergeant Smith testified that he did not observe any bruising or injuries on Defendant. When defense counsel asked Sergeant Smith whether he had taken any photographs of Defendant's body, Sergeant Smith stated that he had. After the State rested, and outside the presence of the jury, Defendant moved for a mistrial because the photographs mentioned during Sergeant Smith's testimony were never disclosed by the State, in direct violation of *Brady*. In response, the State clarified that it never had the photographs in its possession and had not seen the photographs because the Farmington Police Department lost them when the department switched to a new evidence storage system.

**{7}** The district court asked to hear more information from Sergeant Smith concerning the lost photographs. The district court asked Sergeant Smith whether the photographs had been provided to the State—he responded that, he believed the State asked for the photographs at some point but they were not provided because they had been lost. According to Sergeant Smith, the Farmington Police Department was transitioning to placing photographs into a database instead of placing them on disks. Sergeant Smith also testified that he believed the photographs were placed into the database but when he went back to find them, he could not find them.

**{8}** The State clarified that it knew about the lost photographs as early as a year before trial, at the time of the first trial setting the previous winter. The State also stated that it did not disclose the existence of the lost photographs to Defendant. When asked by the district court whether it believed the photographs would have been exculpatory, the State responded that it did not believe so based on Sergeant Smith's statements that Defendant did not appear to have any injuries.

**{9}** "An alleged *Brady* violation constitutes a charge of prosecutorial misconduct." *State v. Balenquah*, 2009-NMCA-055, ¶ 11, 146 N.M. 267, 208 P.3d 912. "We review such charges for abuse of discretion because the trial court is in the best position to evaluate the significance of any alleged prosecutorial errors." *Id.* (internal quotation marks and citation omitted).

**{10}** To establish a *Brady* violation, a defendant must show: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *State v. Stevenson*, 2020-NMCA-005, ¶ 18, 455 P.3d 890 (internal quotation marks and citation omitted).

**{11}** In this instance, there is no question that the first *Brady* requirement was met; however, Defendant failed to show that the suppressed information was either favorable or material to his defense. "Evidence is favorable to an accused if its disclosure and effective use may make the difference between conviction and acquittal regardless of whether such evidence is impeachment evidence or exculpatory evidence." *State* v.

*Worley*, 2020-NMSC-021, ¶ 23, 476 P.3d 1212 (internal quotation marks and citation omitted). Here, apart from the testimony of Sergeant Smith that he took photographs of Defendant, there is no information concerning what the photographs taken of Defendant specifically depict. On appeal, neither party cites to any testimony establishing the contents of the photographs. We only know that photographs were taken of Defendant following the altercation. Defendant asserts he had "bumps on his head," but, again, Sergeant Smith testified that he did not observe any bruising or injuries on Defendant following the altercation. Without more, we cannot conclude that the lost photographs were favorable to Defendant's defense. *See id.*

**{12}** For similar reasons, we also cannot say that the lost photographs were material to Defendant's defense. "When considering materiality, we place the suppressed evidence in the context of the entire record, rather than viewing it in isolation." *State v. Huerta-Castro*, 2017-NMCA-026, ¶ 33, 390 P.3d 185. "The suppressed evidence is considered material only if it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Worley*, 2020-NMSC-021, ¶ 28 (internal quotation marks and citation omitted).

**{13}** Defendant does not advance an argument that the lost photographs constitute a "nondisclosure so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *See id.* ¶ 27 (omission, internal quotation marks, and citation omitted). Rather, Defendant asserts only that, without having laid eyes on the missing photographs, they were material because they were "potentially exculpatory" and would have informed his theory of self-defense developed at trial. This speculative assertion does not suffice to establish materiality. Consequently, we hold that Defendant has failed to establish that a *Brady* violation occurred in this case.

## II.     Mistrial

**{14}** Defendant next argues that the district court erred in denying his motion for mistrial and that it mistakenly relied on *Arizona v. Youngblood*, 488 U.S. 51 (1988). He also asserts that, in the alternative, the district court should have fashioned another remedy such as a lost evidence jury instruction.

**{15}** Defendant first fails to develop a legal argument explaining why the district court's reliance on *Youngblood* was erroneous. Instead, Defendant merely points out a factual difference between that case and the facts at hand without explaining how the legal standard set forth in that case is rendered inapplicable. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings . . . to support generalized arguments," and an appellant must "demonstrate through discussion of facts, arguments, and rulings appearing in the record how the district court [erred].").

**{16}** Defendant also fails to develop a legal argument establishing that the lost evidence was material and prejudicial to his defense for purposes of the three-part test

set forth in *State v. Chouinard*, 1981-NMSC-096, ¶ 16, 96 N.M. 658, 634 P.2d 680 (setting out a three-part test for situations where the state inadvertently destroys, loses, or fails to preserve evidence that has previously been collected during investigation of a crime). *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments). "Our Court has been clear that it is the responsibility of the parties to set forth their developed arguments, it is not the court's responsibility to presume what they may have intended." *State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622. Under these circumstances, we cannot say the district court abused its discretion in denying Defendant's motion for a mistrial or otherwise declining to fashion some other remedy for the lost photographs.

**CONCLUSION**

**{17}**    For the foregoing reasons, we affirm.

**{18}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**