# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-005

Filing Date: October 22, 2019

No. A-1-CA-35962

STATE OF NEW MEXICO,

  Plaintiff-Appellee,

v.

THOMAS STEVENSON,

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Certiorari Denied, December 26, 2019, No. S-1-SC-38015. Released for Publication January 21, 2020.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Adrianne R. Turner
Adrianne R. Turner
Albuquerque, NM

for Appellant

## OPINION

**VARGAS, Judge.**

**{1}** Defendant appeals his convictions for shooting at a motor vehicle (great bodily harm), in violation of NMSA 1978, Section 30-3-8(B) (1993), and aggravated assault with a deadly weapon, in violation of NMSA 1978, Section 30-3-2(A) (1963). He raises four main arguments on appeal, as discussed below. After careful consideration of Defendant's issues, we affirm.

## I. BACKGROUND

**{2}** This case arises out of a violent confrontation between Defendant Thomas Stevenson (Defendant), Codefendant Oshay Toney (Codefendant), and Marvin Ellis (Victim). During the confrontation more than twenty shots were fired into the vehicle (SUV) Victim was driving, with both Defendant and Codefendant firing multiple shots. Defendant claimed he fired in defense of himself or others, and raised both of those doctrines as defenses at trial. He provided evidence that the SUV was driving forward when he fired at it, that he thought it had run over someone, and that it was headed toward a house that was sheltering several children. The State introduced contrary evidence indicating that the SUV was backing out of the driveway when the shooting started and was therefore not threatening Defendant or anyone else. The jury rejected Defendant's version of the events and convicted him of felony murder, voluntary manslaughter, shooting at a motor vehicle resulting in great bodily harm, and aggravated assault with a deadly weapon. The latter conviction was based on the fact that the owner of the SUV was in the passenger seat at the time the shooting began. Subsequently, the district court vacated the felony murder and voluntary manslaughter convictions on legal grounds not relevant to this opinion. Further facts will be provided as they are relevant to each issue discussed below.

## II. DISCUSSION

### A. Best-Evidence Rule

**{3}** The State presented testimony from Victim's nephew (Nephew) about certain text messages he had seen on Victim's phone on the day of the incident. Nephew was able to identify the sender of the text messages as Defendant, and the messages (at least one of them) were threatening in tone. Defendant objected to admission of Nephew's testimony, arguing that the best evidence rule required the State to introduce the messages themselves, not second-hand testimony from a person who had merely read the messages.

**{4}** Text messages are "writings" for purposes of the best-evidence rule and, absent an applicable exception, the original text messages or authorized duplicates of the same must be produced at trial. *See State v. Hanson*, 2015-NMCA-057, ¶¶ 6-7, 348 P.3d 1070. In *Hanson* we also recognized that an exception to the rule, for lost or destroyed evidence, could be applicable if a proper foundation was laid. *See id.* ¶ 13. In order to establish such a foundation, we held, the state must establish that it engaged in a diligent effort to obtain the originals of the writings at issue. *Id.* The State attempted to make that showing in this case by offering the testimony of Detective Leah Acata, the case agent working this homicide case.

**{5}** Detective Acata testified on voir dire that (1) she obtained Victim's cell phone from the owner of the SUV, Victim's girlfriend (Girlfriend), who was present in the SUV when the shooting began; (2) she obtained a warrant authorizing her to access the contents of the phone and took the phone to the New Mexico Regional Computer

Forensic Laboratory (RCFL), which is affiliated with the Federal Bureau of Investigation (FBI); (3) at the RCFL Detective Acata used the "Cellebrite" system at a kiosk to attempt to access the phone's contents, but was unable to get past the phone's "swipe passcode"; (4) she had previously used the same program and RCFL's kiosks hundreds of times to access phones, but as to Victim's phone the system was unable to get past the swipe passcode; (5) she contacted different members of Victim's family to see if any of them knew the swipe passcode that would grant her access to the phone, or, in the alternative, Victim's email address and PIN for the phone, to no avail; (6) she then left the phone with RCFL and submitted a service request asking RCFL personnel to access the phone, but was notified that RCFL was also unable to unlock the phone; (7) Detective Jeremy Guilmette from RCFL informed her that a program had not yet been written that could unlock the particular model of phone owned by Victim, given Victim's use of a swipe passcode instead of a numeric passcode; and (8) the phone was returned to Detective Acata by RCFL. Detective Acata reiterated several times that without a passcode, access to the phone's contents, including the text messages in question, could not be achieved.

**{6}** In response to Detective Acata's voir dire testimony, Defendant did not present any evidence contradicting the information she provided concerning swipe passcodes and the ability to unlock Victim's phone. Counsel for Codefendant did point out that Detective Acata did not send the phone to "Quantico" (a reference to the FBI's central forensics laboratory) for processing. However, Detective Acata testified on redirect that it was her understanding that Quantico would not be able to access the phone unless a program had been written to do so, and no evidence was presented indicating that Quantico would have had any more success accessing the phone than did RCFL. Similarly, Codefendant raised the possibility that the necessary information to access the phone could have been obtained from Victim's phone carrier. But Detective Acata testified that such an effort would not have been successful, and no evidence contradicting this assertion was provided to the district court.

**{7}** Having considered the foregoing evidence, the district court found that the State had met its burden under *Hanson* to show that it made a diligent effort to obtain the original text messages. *See* 2015-NMCA-057, ¶ 13. The court also found that the inaccessibility of the messages was the equivalent of having the messages be physically lost or destroyed, for purposes of the best-evidence rule. Therefore, the court allowed Nephew to testify about the text messages he had seen on Victim's phone.

**{8}** In reviewing this issue, we note first that Defendant does not challenge the district court's determination that the inaccessibility of the text messages was the functional equivalent of the loss or destruction of those messages. We therefore need not decide that legal question in this opinion. With respect to the merits of the "diligent efforts" question, the applicable standard for our review is abuse of discretion. *See id.* ¶ 5. Given the evidence of the efforts made by Detective Acata to unlock Victim's phone, as well as the lack of any evidence indicating that additional efforts may have been successful, the district court's decision that the State had made diligent efforts to obtain the original text messages was not "clearly against the logic and effect of the facts and

circumstances of the case." *See id.* (stating abuse of discretion standard). We affirm the district court's decision as to this issue.

## B.     Possible Extraneous Information Reaching the Jury

{9}     Almost three months after the trial was concluded, the district court received an email from the jury foreman, stating in pertinent part as follows:

> I was the foreman for the jury in the Thomas Stevenson and Oshay Toney case. I have been wondering about something since we sat on the case and the latest gun violence makes me ask the question. Why were the individuals not charged with possession of a firearm as a felon and conceal carry as a felon? Is that included in the charge of committing the crime with a gun? Also it was mentioned that the weapons were "enhanced" so why was the use of a silencer not part of the charges?

{10}     The district court notified the parties about the email, and Defendant subsequently filed a motion requesting an evidentiary hearing, claiming that the email indicated extraneous information may have reached the jury during the trial. Defendant asked that the district court issue a subpoena to the jury foreman, directing the foreman to appear for a hearing at which he could be questioned about any extraneous information. The district court denied the motion.

{11}     Following a jury trial, jurors are forbidden from testifying about any part of the deliberation process or from providing a statement to the court about that process, subject to three exceptions: a juror may testify about whether (a) extraneous prejudicial information was improperly brought to the jury's attention; (b) an outside influence was improperly brought to bear on any juror; or (c) a mistake was made in entering the verdict on the verdict form. Rule 11-606(B) NMRA. Where a party files a motion for new trial based on the possibility that extraneous information reached the jury, the party "must make a preliminary showing that he or she has competent evidence that material extraneous to the trial actually reached the jury." *State v. Mann*, 2002-NMSC-001, ¶ 19, 131 N.M. 459, 39 P.3d 124 (alteration, internal quotation marks, and citation omitted). Although Defendant did not file a motion for a new trial, but instead filed a motion to force the juror to testify concerning the extraneous-information question, we see no reason to depart from the requirement of a preliminary showing of competent evidence before forcing a juror to testify under oath.

{12}     Defendant points to the jury foreman's email and suggests that it indicates a possibility that extraneous information reached the jury. The district court rejected this interpretation of the email, and we do as well. The fact that both Defendant and Codefendant had prior felony convictions was revealed by each while each was testifying. There is no suggestion that either weapon used in the shooting had a silencer attached, and this portion of the email is more probably a result of confusion caused by the phrase "firearm enhancement" that was part of the charges read to the jury at the beginning of trial. To the extent Defendant argues that the email exhibits some

knowledge of the judicial system and felon-in-possession issues, jurors are allowed to use knowledge they already possess in deciding a case, and this is not an indication that impermissible extraneous information reached the jury during trial. *See id.* ¶¶ 27-28. The district court did not abuse its discretion in holding that the juror's email did not provide a basis to force the juror to attend a hearing and testify under oath concerning the source of his knowledge about criminal law and procedure.

## C.     Purported *Brady* Violation

**{13}**     At trial, Girlfriend testified favorably for the State, including testimony that she did not hear Victim threaten Defendant, that Victim did not have a gun in his hand when he was shot, and that the SUV was backing out of the driveway and had exited it when the shooting began. After Girlfriend testified, but before the trial ended, Girlfriend was arrested and charged with a number of counts of fraud arising out of her employment. Defendant learned of the arrest after trial and filed a motion for new trial raising the State's failure to disclose the arrest as one of the grounds for the motion.

**{14}**     On appeal Defendant contends the prosecutor committed a *Brady* violation by failing to disclose the investigation and arrest of one of the State's most important witnesses. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring prosecution to disclose evidence in its possession that could be favorable to a defendant); *Case v. Hatch*, 2008-NMSC-024, ¶¶ 44-47, 144 N.M. 20, 183 P.3d 905 (discussing standards applicable to a *Brady* claim in New Mexico). Defendant maintains the information about the investigation and arrest would have been valuable impeachment material. Material bearing on a witness's credibility, and thus useful for purposes of impeachment, is governed by the disclosure requirements of *Brady* and its progeny. *See Case*, 2008-NMSC-024, ¶¶ 50, 53; *see also United States v. Bagley*, 473 U.S. 667, 678-83 (1985).

**{15}**     We decline to address Defendant's *Brady* argument because it was not preserved below. Defendant argues that he preserved the issue in his motion for new trial. That motion, however, fails to mention *Brady* or any other case discussing the requirements of the *Brady* doctrine. More importantly, the motion did not discuss or even mention any of the doctrinal bases for the *Brady* requirements, such as due process or prosecutorial misconduct. *See, e.g.*, *Case*, 2008-NMSC-024, ¶¶ 44, 47; *State v. Balenquah*, 2009-NMCA-055, ¶ 11, 146 N.M. 267, 208 P.3d 912. Furthermore, neither the State nor the district court understood Defendant to be raising a *Brady* issue. Instead, the State's response addressed Defendant's claim as a matter of newly-discovered evidence and Defendant did not file a reply brief clarifying that he was raising a *Brady* issue. Ultimately, the district court decided the motion relying on newly discovered evidence principles.

**{16}**     We acknowledge that the nomenclature used in a motion is not controlling and that legal citations contained in a motion are not determinative of the issue being raised. *See, e.g.*, *State v. Paiz*, 2011-NMSC-008, ¶ 31, 149 N.M. 412, 249 P.3d 1235. Instead, we look to the substance of the motion to determine the actual issue raised. *Id.* The motion for new trial filed in this case did not in any way alert the district court to the

potential *Brady* issue or provide it with a fair opportunity to rule on a *Brady* issue. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked."). The motion did not claim that the prosecutor herself knew of the investigation or of Girlfriend's arrest. Nor did it even allege that the prosecution team was aware of the investigation or Girlfriend's arrest. *See Case*, 2008-NMSC-024, ¶ 46 (explaining that "the 'prosecution' for *Brady* purposes encompasses not only the individual prosecutor handling the case, but extends to the prosecutor's entire office, as well as law enforcement personnel and other arms of the state involved in investigative aspects of the case" (alteration, internal quotation marks, and citation omitted)); *see also Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 824, 831-32 (10th Cir. 1995) (discussing a prosecution team theory and imputation of knowledge to the prosecutor). The factual allegations of Defendant's motion were limited to assertions that Albuquerque Police Department (APD) officers prepared the complaint and the arrest warrant issued against Girlfriend, and subsequently arrested Girlfriend and that Detective Acata, an employee of APD, sat at counsel table with the prosecutors at Defendant's trial.

**{17}** Defendant's assertion that one APD officer, who was not "involved in investigative aspects of the case," investigated and arrested Girlfriend for alleged offenses completely distinct from the case in which she testified, is simply insufficient to alert anyone to a potential *Brady* issue. *See, e.g.*, *Case*, 2008-NMSC-024, ¶ 46 (alteration, internal quotation marks, and citation omitted); *see also Smith*, 50 F.3d at 824 (stating that for *Brady* purposes, knowledge of arms of the state "involved in investigative aspects of a particular criminal venture" is imputed to the prosecutor). Defendant's motion seemingly seeks to impose some sort of strict liability upon the State for a discovery violation—Defendant asserted that APD possessed the information about Girlfriend's arrest, that Detective Acata sat at the counsel table with the prosecutors, and that the State failed to disclose the arrest, thus violating LR2-400(D)(l), (3) NMRA (2016), as well as Rule 5-501(A)(3) NMRA. This, though, is not the same as a *Brady* violation and nothing in the motion was sufficient to raise an allegation of a *Brady* violation. In sum, merely alleging that possible impeachment information, entirely unconnected to the case at hand, was possessed by a law enforcement officer who also had no connection to the case at hand, does not implicate *Brady* to a sufficient extent to preserve such an argument for appeal. We therefore will not address the *Brady* argument brought for the first time on appeal. *See Paiz*, 2011-NMSC-008, ¶ 33 ("On appeal we only consider issues raised in the [district] court unless the issues involve matters of jurisdictional or fundamental error.").

**{18}** Although Defendant has argued the merits of the *Brady* issue and has not asked us to address it as a matter of fundamental error, our Supreme Court has indicated (albeit in an unpublished decision) that an improperly preserved *Brady* issue should be analyzed for fundamental error. *See State v. Gardner*, No. S-1-SC-35981, dec. ¶ 30 (N.M. Sup. Ct. Mar. 8, 2018) (non-precedential); *see also State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814 (stating that when an issue of prosecutorial misconduct has not been properly preserved by a timely objection at trial, we have discretion to review the claim on appeal for fundamental error). We find no fundamental

error occurred. To establish a *Brady* violation a defendant must show three things: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Case*, 2008-NMSC-024, ¶ 44 (internal quotation marks and citation omitted). As we have alluded to above, Defendant's submission to the district court did not raise a viable question as to the first prong of the test—whether the prosecution suppressed the evidence. Absent information indicating a member of the prosecution team, as opposed to an unidentified APD officer, possessed the information, knowledge of that information cannot be imputed to the prosecutor and, therefore, no prosecutorial suppression occurred.

**{19}** While the failure to satisfy the first *Brady* requirement alone would justify a refusal to find fundamental error here, we note also that the lack of information about Girlfriend's investigation and arrest did not prevent Defendant from vigorously challenging her credibility at trial. Defendant was able to elicit evidence that Girlfriend had given different versions of the incident at different times, including information as critical as who fired the first shots, Defendant or Codefendant. There was also evidence that Girlfriend told different versions of the events to her own daughter, and then denied at trial that she had even spoken to her daughter about the shooting. Girlfriend's daughter also testified that she knows her mother lies. Significantly, Girlfriend was also forced to admit that she found a gun on the floor of the SUV after the shooting, and instead of giving it to the police, she attempted to hide it by tossing it into some bushes. She also testified on cross-examination that during an interview with Detective Acata she repeatedly denied removing the gun from the SUV until she was confronted with the possibility that DNA testing would be done on the gun. The fact that the arrest information was not the only source of impeachment material regarding Girlfriend, and that Defendant was able to cast considerable doubt on her credibility without that information, is a factor weighing against a finding of *Brady* materiality with respect to that information. *See, e.g.*, *Case*, 2008-NMSC-024, ¶ 54 (discussing materiality of suppressed information, noting that the witness's credibility had already been aggressively attacked, and concluding that cumulative evidence is not material for purposes of *Brady*). Given the facts that Defendant did not show the prosecution suppressed the information, and that the materiality of that information is at best minimal, fundamental error was not present here. *Cf. State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error occurs in "cases in which a mistake in the process makes a conviction fundamentally unfair").

**{20}** In addition to the *Brady* argument, Defendant references the Rules of Criminal Procedure as part of his presentation on this issue. His argument consisted of five sentences in his brief in chief, pointing out that Defendant had filed a demand for all discovery required by *Brady* and Rules 5-501, 5-503, and 5-505 NMRA, including potential impeachment evidence; that the State had a continuing duty to disclose newly discovered evidence under Rule 5-505(A); and that the State was therefore required to disclose the filing of the criminal complaint against Girlfriend, the issuance of the arrest warrant, and the arrest. Defendant did not develop any type of argument about why the State would be responsible under the rules for disclosing evidence of which the prosecution team was unaware, nor cite any authority beyond the bare language of the

rules that would explain why the discovery rules were applicable and were violated under the circumstances of this case. We will not address an undeveloped argument or perform Defendant's research for him. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031(explaining that appellate courts are under no obligation to review unclear or undeveloped arguments); *State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 (reminding counsel that the appellate courts are not required to do their research). We therefore do not address the question of whether a violation of the Rules of Criminal Procedure occurred under the particular circumstances of this case.

## D.      Evidence of Prior Violent Conduct

**{21}**    As part of his self-defense and defense-of-others claims, Defendant proposed to introduce evidence of specific violent conduct engaged in by Victim in the past. This evidence included a twenty-five-year-old murder conviction; another alleged murder for which Victim had not been charged; an alleged rape of a male inmate while Victim was incarcerated; alleged rapes of several women occurring since 2015, when Victim was released from prison; and the fact that Victim referred to himself, or was known as, "Hit Man" or "the Don." The State objected and argued that if Defendant was allowed to introduce evidence of specific prior violent acts by Victim, the State would be allowed to respond by presenting evidence of Defendant's own prior violent acts. The State relied on Rule 11-404(A)(2)(b)(ii) NMRA as the basis of its argument, and presented a litany of prior violent acts by Defendant, including prior convictions, charged conduct that did not lead to convictions, and uncharged conduct, that the State wanted to present to the jury at trial.

**{22}**    At a pretrial hearing the district court appeared to accept the State's argument, with the proviso that the "more prejudicial than probative" balancing provisions of Rule 11-403 NMRA would apply to any prior conduct evidence that either side attempted to introduce. The district court specifically reserved ruling as to any particular piece of evidence concerning prior violent conduct and required the parties to submit written filings explaining the evidence each side proposed to present so the court could properly apply the Rule 11-403 balancing test to each such piece of evidence. In sum, at the hearing the district court made no definitive ruling about what prior violent conduct evidence would be allowed at trial, from either side.

**{23}**    On appeal Defendant argues that the State's and the district court's interpretation of Rule 11-404(A)(2)(b)(ii) is erroneous and application of that interpretation was reversible error. It is well established that a defendant claiming self-defense or defense of others, as did Defendant here, may present evidence of specific prior violent acts by the victim, if the defendant was aware of those prior acts at the time of the incident in question. *See State v. Maples*, 2013-NMCA-052, ¶¶ 14, 18, 300 P.3d 749. The purpose of allowing such evidence is to permit the defendant to establish his or her "subjective apprehension of the victim[,]" which caused the defendant to act reasonably to prevent the victim from causing harm. *Id.* ¶ 18. It is also well established that Rule 11-403's balancing test applies to prior violent acts evidence, such that a defendant may not be permitted to submit to the jury evidence of each and every violent act allegedly

committed by the victim in the past. *See, e.g.*, *State v. Baca*, 1992-NMSC-055, ¶ 5, 114 N.M. 668, 845 P.2d 762 (holding that the district court "retains the discretion to exclude specific instances of the victim's conduct if the evidence is substantially more confusing, cumulative, or prejudicial than probative). Admission of prior violent conduct evidence is within the district court's discretion, and exclusion of some instances of the victim's prior conduct will constitute an abuse of discretion only if the defendant was prevented from proving an element of his defense. *See id.* ¶ 9. In particular, where the evidence is cumulative, no abuse of discretion is committed if the evidence is excluded. *See id.* ¶ 11. Thus, Defendant is correct that he was entitled to introduce at least some evidence of Victim's prior violent acts, as long as Defendant was aware of those acts at the time of the shooting.

**{24}**   It also seems apparent that Defendant's interpretation of Rule 11-404(A)(2)(b)(ii) is correct, and the district court's tentative acceptance of the State's interpretation was not. Neither the parties nor this Court has been able to locate published cases discussing this provision of the rules. However, our Supreme Court, in an unpublished decision, addressed the very issue raised by the parties in this case. *State v. Ramirez*, No. S-1-SC-34576, dec., (N.M. Sup. Ct. Dec. 1, 2016) (non-precedential). *Ramirez*, like this case, was a self-defense case. *See id.* ¶ 59. At trial the state was allowed to present evidence of a prior violent incident during which the defendant had head-butted a police officer. *Id.* ¶ 55. Our Supreme Court held that this was error, stating as follows: "While it is correct that the defendant who offers evidence of a victim's pertinent character trait (e.g., violence) opens the door to allow the prosecution to offer evidence of the defendant's same character trait, under Rules 11-404(A)(2)(b) and 11-404(A)(2)(b)(ii) . . . , the evidence that is admitted *may only be reputation or character evidence*, unless the character trait is an essential element of the crime charged." *Ramirez*, No. S-1-SC-34576, dec. ¶ 59 (emphasis added). The Court went on to point out that introducing evidence of a defendant's past acts of violence does not prove an essential element of the crime charged because violence is not a specific element of murder or self-defense. *Id.* Finally, the Court noted that it appeared that the evidence of the defendant's prior violent act was offered only to show the defendant's propensity for violence, which is impermissible. *See id.* Therefore, *Ramirez* held in essence that only reputation or opinion evidence should have been admitted under Rule 11-404(A)(2)(b)(ii). *See Ramirez*, No. S-1-SC-34576, dec. ¶ 59.

**{25}**   Of course, as an unpublished opinion, *Ramirez* is not binding precedent, and we discuss it only for its persuasive value. *See* Rule 12-405(A) NMRA. We note first that Rule 11-404(A)(2)(b)(ii) is modeled after the federal version of that rule. Rule 11-404 comm. cmt. (discussing 2012 amendment). When the federal version of Rule 11-404(A)(2)(b)(ii) was added to Fed. R. Evid. 404, the Federal Rules Advisory Committee discussed the purpose of the amendment and then made the following statement: "By its placement in Rule 404(a)(1), the amendment covers only proof of character by way of reputation or opinion." Fed. R. Evid. 404 advisory comm. notes. Since the federal rule is similar to our own, the advisory committee's discussion of the federal rule is persuasive authority for interpreting our own version. *See State v. Lopez*, 1997-NMCA-075, ¶ 10, 123 N.M. 599, 943 P.2d 1052 (stating the same proposition with respect to

federal case law and legislative history). The federal version of the rule does not allow proof of character by way of prior violent acts, but only by reputation or opinion evidence, which is exactly what *Ramirez* held.

**{26}**    In addition, the discussion in *Ramirez* comports with the purposes of our evidentiary rules concerning prior conduct by parties. As *Ramirez* implies, admission of evidence of prior conduct is severely limited because in many cases the only purpose for offering such evidence is to establish a propensity by a party to act in a certain way. *See Ramirez*, No. S-1-SC-34576, dec. ¶ 59 ("It seems that the information of [the d]efendant head-butting an officer is being used only to show [the d]efendant's propensity for violence."). The case before us clearly illustrates the issue. Defendant sought to introduce evidence of Victim's prior violent acts for a permissible purpose, to show he was afraid of Victim. *See Maples*, 2013-NMCA-052, ¶ 18. In response, the State offered no permissible purpose for allowing evidence of Defendant's prior violent conduct, relying solely on the language of the rule. And as Defendant argued below and argues on appeal, Defendant's violent history has no relevance to the issues in this case, other than as impermissible propensity evidence tending to show Defendant did not act in self-defense or in defense of others. Adopting the State's interpretation of the provision would, in self-defense cases, essentially abrogate the evidentiary rules' forceful limitation of prior conduct evidence to a few permissible purposes, and would allow the State to introduce such highly prejudicial evidence against a defendant simply because the defendant attempted to prove his defense by showing he was aware of the victim's history of violent acts. We reject such an interpretation and instead adopt the one set out in *Ramirez*: under Rule 11-404(A)(2)(b)(ii), the evidence that the state may responsively introduce is limited to reputation or opinion evidence in most instances, unless the defendant's character trait is an essential element of the crime charged.

**{27}**    The fact that the State's interpretation of Rule 11-404(A)(2)(b)(ii) and the district court's apparent acceptance of that interpretation was wrong, does not end our inquiry. We must still decide whether Defendant established that he was prejudiced as a result. *See State v. Fernandez*, 1994-NMCA-056, ¶ 13, 117 N.M. 673, 875 P.2d 1104 ("In the absence of prejudice, there is no reversible error."). Defendant argues that the district court's action "gutted [Defendant's] ability to support his self-defense and defense of another claims." We have difficulty with this assertion, however, because Defendant was allowed to introduce some evidence of Victim's prior violent conduct, and the State was allowed to introduce almost no evidence of Defendant's own violent conduct except that which had resulted in convictions. Defendant testified that he knew of Victim's prior murder conviction and felt threatened as a result. He was also allowed to call Victim "Hit" or "Hit Man" on the stand several times, mentioning that the nickname also made him feel threatened. Through cross-examination of Girlfriend, Defendant was allowed to present evidence that Victim had four other felony convictions since 2008, in addition to the murder conviction about which Defendant testified.

**{28}**    In response to this "prior violent conduct" evidence concerning Victim, the State was not allowed to delve into any of the many instances of Defendant's prior charged or

uncharged conduct that the State had originally proposed to explore. Instead, the district court limited the State to eliciting evidence of Defendant's prior felony convictions.

**{29}** On appeal Defendant has not argued that any of the evidence concerning his prior convictions was wrongly admitted. Instead, he argues that he was inhibited from even attempting to introduce evidence about Victim's prior violent acts, such as the alleged rape of an inmate or the alleged rapes of women since 2015, due to the district court's apparent acceptance of the State's position regarding Rule 11-404(A)(2)(b)(ii). We point out that Defendant was not inhibited from presenting all of the prior violent conduct evidence for which he sought admission, as we have discussed above.

**{30}** In addition, Defendant did not preserve this "inhibition" argument below. As we noted above, at the pretrial hearing the district court made no definitive ruling as to what evidence would be permitted and what would not. At trial, the district court reiterated that it was reserving ruling on the evidence of prior violent conduct, as to both Victim and Defendant. Defendant did subsequently state that he did not plan on "going into" the alleged prison rapes or other alleged rapes, but he did not explain why. Defendant never made a request to have the district court make a final determination about what evidence would be permitted and what would not, or how the State might be permitted to retaliate if he introduced other evidence of prior violent acts by Victim. He also did not attempt to introduce additional evidence of prior violent conduct by Victim. By failing to do so, he gave the district court no opportunity to apply Rule 11-403 to any other evidence he might have wanted to offer, or to address his concerns about the alleged inhibitory effect of the court's interpretation of Rule 11-404(A)(2)(b)(ii). It is axiomatic that the district court cannot be expected to rule on matters that are not presented to it for decision, and we will not reverse the court on grounds not presented to that court. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the [district] court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)).

**{31}** In the end, Defendant attempted to introduce only two instances of prior violent conduct by Victim that he knew about at the time of the shooting: Victim's murder conviction, and Victim's "Hit Man" nickname. The district court allowed him to testify about both, and as we have discussed, did not allow the State to introduce its own violent-conduct evidence in response. To the extent he now argues that he was sub silentio inhibited from attempting to present evidence of additional prior violent acts, that is not a question we can review without a record supporting it. *See State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review."). We therefore hold that any prejudice Defendant may have suffered as a result of the district court's erroneous interpretation of Rule 11-404(A)(2)(b)(ii) is not of record and cannot be the basis for reversal.

**{32}** A review of the evidence introduced at trial, which is all we can consider at this point, shows that the district court was appropriately cautious about admitting evidence of prior violent conduct as to both Victim and Defendant, given the restrictions of Rule

11-403. The district court specifically stated that it wanted to avoid "mini[ ]trial[s]" on extraneous matters. Although the district court appears to have misconstrued Rule 11-404(A)(2)(b)(ii), when put to the test and presented with the actual evidence that Defendant and the State wanted to introduce, the court rejected most of the evidence proffered by the State and admitted only evidence that was admissible under other rules or for other reasons. No error has been claimed as to the specific pieces of evidence that were presented to the district court for a decision as to admissibility. As to other rulings that the district court could have been, but was not, asked to make, we will not speculate.

**{33}** As a final note, when a victim's prior violent acts are excluded by the district court, the main issue on appeal is whether a defendant was deprived of the opportunity to present his defense. *See State v. Armendariz*, 2006-NMSC-036, ¶¶ 14, 18, 140 N.M. 182, 141 P.3d 526, *overruled on other grounds by State v. Swick*, 2012-NMSC-018, ¶ 31, 279 P.3d 747. That did not happen here. Defendant was allowed to present evidence that he feared Victim, and to show that he had reason to do so given Victim's violent history. Defendant also testified about the specific facts surrounding the shooting that caused him to fire at the SUV—that he thought the SUV may have run over a person and that it was driving toward a house containing a number of children. Defendant therefore had an adequate opportunity to present his claims of self-defense and defense of others, and we will not reverse the district court on this issue.

## III.    CONCLUSION

**{34}** Based on the foregoing, we affirm Defendant's convictions.

**{35}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**