The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>August 8, 2022</u>

**No. A-1-CA-38175**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**GEORGE CALAGUAS BRYANT,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven E. Blankinship, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HENDERSON, Judge.**

{1} Following a jury trial, Defendant George Bryant was convicted of two counts of attempted first degree murder with a firearm, contrary to NMSA 1978, Sections 30-2-1(A)(1) (1994), and 30-28-1 (1963); one count of shooting at or from a motor vehicle resulting in great bodily harm, a second degree felony, contrary to NMSA 1978, Section 30-3-8(B) (1993); and one count of shooting at or from a motor vehicle resulting in injury, a third degree felony, contrary to Section 30-3-8(B). Defendant raises six issues on appeal: (1) the district court erred in vacating the conviction with the greater sentence following the determination that his convictions would have resulted in double jeopardy; (2) the district court erred in failing to give the jury a lesser included offense instruction; (3) the district court erred in denying Defendant's motion to suppress; (4) the State failed to present sufficient evidence that Defendant was the shooter; (5) the State committed a *Brady* violation when it failed to send gunshot residue (GSR) swabs to the crime lab for analysis; and (6) the district court erred in denying Defendant's motion for a new trial. For the reasons that follow, we reinstate Defendant's previously vacated conviction for attempted first degree murder, vacate his conviction for shooting at or from a motor vehicle resulting in great bodily harm, and remand to the district court for entry of an amended judgment and sentence in conformity with this opinion. We perceive no

error in the remaining issues raised by Defendant, and therefore, affirm in those respects.

**BACKGROUND**

{2}     Defendant knew Anthony Maynez and Cherie Weston (collectively, Victims), for at least thirteen years before the events at issue. Approximately one week before the shooting, Defendant was visiting Victims at Mr. Maynez's father's house located in La Luz, New Mexico (the house). During this visit, Defendant made sexually suggestive comments towards Ms. Weston, which angered Mr. Maynez because although Ms. Weston and Mr. Maynez were not romantically involved at the time, Ms. Weston is the mother of his child. A fight ensued between the two men, which was eventually broken up by Mr. Maynez's father. Before leaving, Defendant said to Mr. Maynez, "I don't want to do this, but I got to kill you" and made a gun-like hand gesture towards him.

{3}     On the night of November 10, 2014, police responded to a shooting in front of the house. Victims were sitting in Mr. Maynez's vehicle in front of the house when Defendant drove by in an Oldsmobile Cutlass and shot into the vehicle multiple times. Mr. Maynez was shot in his hand, arm, and stomach, and Ms. Weston was shot in the left arm and a bullet fragment had to be removed from her face. Victims identified Defendant as the shooter.

2

**{4}** Shortly after the shooting, Defendant was located and stopped by police not far from the scene of the crime, and he was driving a brown Oldsmobile Cutlass. Defendant was subsequently charged with and convicted of two counts of attempt to commit first degree murder with a firearm, one count of shooting at or from a motor vehicle resulting in great bodily harm, and one count of shooting at or from a motor vehicle resulting in injury.

**{5}** Following his jury trial, Defendant filed a timely motion for a new trial based on five arguments. At the hearing on his motion, Defendant only presented three arguments for a new trial: (1) the prosecutor introduced false information stated as evidence; (2) new evidence; and (3) a new witness. The district court denied Defendant's motion for a new trial finding Defendant's claim of prosecutorial misconduct to be without merit and that he failed to meet his burdens with regard to his new evidence and new witness claims.

**{6}** Defendant also filed a motion to review for double jeopardy. The district court denied Defendant's motion. However, the district court acknowledged in its order denying Defendant's motion that he was entitled to raise the double jeopardy violation issue again at sentencing, which he did. At sentencing, the district court agreed with Defendant that two out of four of his convictions must be vacated based on double jeopardy. The court vacated Defendant's convictions for the attempted first degree murder of Mr. Maynez (Count 1), and the shooting at or from a motor

vehicle resulting in bodily harm related to Ms. Weston (Count 3) and sentenced him accordingly for a total of twenty-seven years to run consecutively. This appeal followed.

**DISCUSSION**

**I.      The District Court Vacated the Wrong Conviction**

{7}      Defendant contends that the district court vacated the wrong conviction after it found that Defendant's convictions for attempted first degree murder and shooting at or from a motor vehicle resulted in a double jeopardy violation. We agree.

{8}      In New Mexico, merger "is a remedial measure in response to a violation of the double jeopardy protection against multiple punishments for a single offense." *State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456. "[D]ouble jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated." *Id.*

{9}      Defendant was convicted of two counts of attempted first degree murder with a firearm and two counts of shooting at or from a motor vehicle. At Defendant's sentencing hearing, the district court found that Defendant's convictions for attempted first degree murder and shooting at or from a motor vehicle resulted in a double jeopardy violation. Consequently, the district court was required to vacate one of the two convictions related to each Victim. *See id.* At issue here are Defendant's convictions related to Mr. Maynez. The district court vacated

4

Defendant's conviction for attempted first degree murder of Mr. Maynez, and maintained his conviction for shooting at or from a motor vehicle resulting in great bodily harm (Count 4).

{10}   Defendant's conviction for attempted first degree murder of Mr. Maynez, a second degree felony, carried a nine-year basic sentence with a four-year habitual offender enhancement and an additional one-year enhancement for the use of a firearm for a total of fourteen years. *See* § 30-2-1(A)(1); § 30-28-1; *see also* NMSA 1978, § 31-18-17(B) (2003); NMSA 1978, § 31-18-16(A) (1993, amended 2022). His conviction for shooting at or from a motor vehicle resulting in great bodily harm, also a second degree felony, carried a nine-year basic sentence with a four-year habitual offender enhancement, totaling thirteen years. *See* § 30-3-8(B); § 31-18-17(B).

{11}   We review the district court's decision regarding which conviction to vacate for an abuse of discretion. *See State v. Porter*, 2020-NMSC-020, ¶ 42, 476 P.3d 1201 ("Where, as here, both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court."). However, "even when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a

misapprehension of the law." *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal quotation marks and citations omitted).

{12}     While our Supreme Court has previously declined to instruct district courts on which conviction should be vacated when both convictions are the same degree felony, we have never been presented with the issue faced in this case. *See Porter*, 2020-NMSC-020, ¶ 42. However, our Supreme Court has repeatedly held that "where one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence." *State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426. Here, we must determine whether the district court's decision to take into account potential good time credit in deciding which sentence is shorter aligns with our precedent. As we explain, the New Mexico Department of Corrections' (NMDC) ability to shorten Defendant's period of confinement per the Earned Meritorious Deduction Act (EMDA), NMSA 1978, § 33-2-34(A) (2015), does not change the length of his sentence.

{13}     The EMDA governs prisoner eligibility for an award of good-time deductions in the state prison system. *State v. Tafoya*, 2010-NMSC-019, ¶ 11, 148 N.M. 391, 237 P.3d 693; *see* § 33-2-34. While incarcerated, an inmate may earn meritorious deductions through active participation in authorized prison programs and upon the recommendation of a supervisor and approval of the warden. *See* § 33-2-34(B).

These deductions "decrease the maximum amount of time an inmate must serve in prison before being eligible for parole or release." *Tafoya*, 2010-NMSC-019, ¶ 11. Thus, although the EMDA may affect a defendant's time confined in prison, it does not affect the length of a defendant's sentence, i.e., the amount of time he or she is being punished by the state. *See State v. Aqui*, 1986-NMSC-048, ¶ 9, 104 N.M. 345, 721 P.2d 771 (stating "[a d]efendant['s] claims of entitlement to good time credits therefore challenge the execution of their sentences rather than the sentences themselves"); *Robinson v. Cox*, 1966-NMSC-210, ¶ 6, 77 N.M. 55, 419 P.2d 253 ("A release on parole is an act of clemency or grace resting entirely within the discretion of the parole board. One who is paroled is not thereby released from custody but is merely permitted to serve a portion of his sentence outside the walls of the penitentiary, under such conditions as the board may impose and during the pleasure of the board."). Thus, it was a misapprehension of the law for the district court to determine that Defendant's conviction for attempted first degree murder resulted in the shorter sentence.

{14} It is evident that the district court engaged in a hypothetical analysis that went beyond considering the sentence length of each conviction, and also took into account that one conviction was a serious violent offense, which could affect potential good time credit awarded by the NMDC toward Defendant's total time incarcerated. The difference between the total years Defendant would serve *if* he

earned good time is 85 percent of thirteen years (approximately eleven years) for shooting at or from a motor vehicle resulting in great bodily harm and 50 percent of fourteen years (seven years) for attempted murder. *See* § 33-2-34(A). The result of this hypothetical calculation essentially reversed the conviction, which carries the shorter sentence and seemed to inform the district court's ultimate decision regarding which conviction to vacate. However, the computation of good time credit is a discretionary matter that is reserved for the NMDC, and should not impact the determination of the original sentence. *See Aqui*, 1986-NMSC-048, ¶ 9 (stating that "[t]he computation of good time credits is exclusively an administrative responsibility, and such deductions have no bearing upon the validity of the original sentence imposed by the district court").

{15}     Further, it is necessary to ensure consistent sentencing amongst criminal cases. If one district court chooses to exclusively look at the length of a sentence and another chooses to determine what a sentence *could* result in based on a potential computation of good time, the sentencing of individual defendants across the state would not be consistent, potentially resulting in some defendants receiving significantly longer sentences than others with the same convictions.

{16}     Therefore, because shooting at or from a motor vehicle resulting in great bodily harm is the conviction with the shorter sentence, we reinstate Defendant's conviction for attempted first degree murder of Mr. Maynez (Count 1), vacate his

8

conviction for shooting at or from a motor vehicle resulting in great bodily harm (Count 4), and remand to the district court for resentencing.

**II.    The District Court Did Not Err by Failing to Give Jury Instructions on the Lesser Included Offense**

{17}    Defendant argues that the district court erred by failing to give a jury instruction on aggravated battery as a lesser included offense of attempted first degree murder of Ms. Weston. Defendant failed to preserve this alleged instructional error for appellate review because he did not tender any jury instructions at trial to indicate that the charge of aggravated battery should be considered as a lesser included offense with regard to the charges related to Ms. Weston. Thus, our review is only for fundamental error. *See State v. Baxendale*, 2016-NMCA-048, ¶ 11, 370 P.3d 813 (citing *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134).

{18}    However, in cases such as this, our Supreme Court has declined to apply the doctrine of fundamental error to a defendant's *choice* of whether to have the jury instructed on lesser included offenses, and has "repeatedly . . . held that the defendant cannot be heard to complain if the [district] court instructed the jury as he [or she] desired." *State v. Boeglin*, 1987-NMSC-002, ¶ 10, 105 N.M. 247, 731 P.2d 943; *see id.* ("[New Mexico courts] consistently have imposed upon the defendant the duty to make the tactical decision whether or not to seek jury instructions on lesser degrees of [a crime] supported by the evidence.").

9

{19}    After the State rested its case, outside of the presence of the jury, the district court held a sidebar to discuss jury instructions. Defendant requested two jury instructions, both of which were given to the jury. The State tendered its proposed jury instructions, and the district court went through each proposed instruction with the parties. Initially, the State proposed an instruction for aggravated battery with a deadly weapon as a lesser included offense of attempt to commit first degree murder of Ms. Weston, but withdrew the instruction without any objection from Defendant. Defendant did not request any other instructions. Defendant was aware of the potential lesser included offense instruction of aggravated battery as evidenced by the record, but did not argue for or tender a proposed instruction for a lesser included offense. Defendant has failed to prove any violation of a constitutional guarantee resulting from the failure of the district court to sua sponte give a lesser included offense instruction, and it is not our place to question Defendant's strategies at trial. *See Boeglin*, 1987-NMSC-002, ¶ 15 ("We hold that, consistent with the constitutional guarantees of a fair trial, the defendant in a first degree murder prosecution may take his chances with the jury by waiving instructions on lesser included offenses and cannot be heard to complain on appeal if he has gambled and lost."); *see also State v. Dean*, 1986-NMCA-093, ¶ 10, 105 N.M. 5, 727 P.2d 944 (noting that appellate courts do not question trial tactics or strategy). For these

reasons, we hold that the district court did not err by failing to give lesser included jury instructions of aggravated battery with regard to Ms. Weston.

**III.     The District Court Properly Denied Defendant's Motion to Suppress**

{20}     Defendant contends that the officer in this case lacked reasonable suspicion to conduct a traffic stop and investigatory detention of him on the night of the shooting, and consequently, all evidence obtained after the stop should have been suppressed. We disagree and hold that the district court did not err by denying Defendant's motion to suppress.

{21}     Our review of a district court's order on a motion to suppress presents "a mixed question of fact and law." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180. "[W]e then review de novo the trial court's application of law to the facts to determine whether the search or seizure were reasonable." *Leyva*, 2011-NMSC-009, ¶ 30.

{22}     "A police officer can initiate an investigatory traffic stop without infringing the Fourth Amendment [of the United States Constitution,] or Article II, Section 10 [of the New Mexico Constitution] if the officer has a reasonable suspicion that the law is being or has been broken." *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410

P.3d 186 (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. James*, 2017-NMCA-053, ¶ 12, 399 P.3d 930 (internal quotation marks and citation omitted). "A reasonable suspicion arises if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted).

{23} The district court's findings of fact were based on Detective Hunter's testimony at the hearing on Defendant's motion to suppress. Detective Hunter testified that on November 10, 2014, he responded to a shooting at the house in La Luz, New Mexico shortly after 11:00 p.m. Upon arrival, he learned the identities of Victims from other officers. He also learned that Victims identified Defendant as the shooter. Detective Hunter received a description of the vehicle that the shots were fired from an Oldsmobile Cutlass, and was aware that Defendant owned a vehicle similar to this description. He was familiar with Defendant in a criminal context prior to this incident. After leaving the scene of the shooting, Detective Hunter drove by Defendant's residence and discovered he was not there. Detective Hunter then drove to a place where he thought Defendant might be: the residence of Melissa

12

Granados,[1] a known associate of Defendant. Ms. Granados's residence was less than ten miles from the house. When he arrived at Ms. Granados's residence, he observed a male standing by the side door who resembled Defendant. While driving by, Detective Hunter heard the male say, "See the cops are driving by right now." Detective Hunter then set up surveillance near Ms. Granados's residence, and within thirty minutes he heard and saw a brown Oldsmobile Cutlass pull away from the residence. He recognized this vehicle as one that belonged to Defendant. While following the vehicle, Detective Hunter ran its license plate and learned that it belonged to Defendant's father. After confirming the owner of the vehicle, Detective Hunter decided to initiate a traffic stop and identified Defendant as the driver. From the time of the shooting to when Detective Hunter initiated the traffic stop of Defendant's vehicle approximately thirty to forty minutes had elapsed.

{24}   Taken as a whole, Detective Hunter's testimony clearly demonstrates that he believed a crime had occurred. *See Martinez*, 2018-NMSC-007, ¶ 10. Therefore, we cannot conclude that the district court erred in denying Defendant's motion to suppress.

---

[1]For purposes of the record, Ms. Granados, formerly known as Melissa Best, was listed on the witness list and occasionally referred to as Ms. Best throughout this case.

**IV.    The State Presented Sufficient Evidence That Defendant Was the Shooter**

{25}    Defendant argues that the evidence presented at trial was insufficient to prove that he was the shooter. He claims that the eyewitness identification "lack[ed] reliability" and there were "gaps in the State's evidence." We are not persuaded, and conclude that the evidence that Defendant was the shooter is sufficient.

{26}    When reviewing a jury's verdict for sufficient evidence, we determine whether substantial evidence, either direct or circumstantial, exists to support every element essential to a conviction beyond a reasonable doubt. *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057. "Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). We will not "second-guess[] the jury's decision concerning the credibility of witnesses[ by] reweighing the evidence, or substituting [our] judgment for that of the jury." *Id.* "So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." *Id.* (internal quotation marks and citation omitted).

{27}    Mr. Maynez offered the following testimony at trial. On the night of the shooting, around 10:00 p.m., he and Ms. Weston were sitting in his vehicle in front of the house. Approximately thirty seconds after arriving at the house in his car, another vehicle that Mr. Maynez testified was Defendant's vehicle turned onto

14

Holloman and began driving towards them. At this point, Mr. Maynez started his vehicle intending to drive away. As the other vehicle continued slowly towards Victims, Mr. Maynez slouched down in an attempt to hide. When the other vehicle had pulled up next to Mr. Maynez's car, Ms. Weston said, "Oh no, there's [Defendant]," and Mr. Maynez was able to see the driver was, in fact, Defendant. That is when Defendant started shooting into his car. Mr. Maynez testified that he recognized Defendant's "baldhead" and that he was "100 percent positive" that the driver who shot at him was Defendant because he "saw him." Mr. Maynez heard seven to nine shots. He was shot three times, once in the hand, once in the arm, and once in the stomach.

{28}    Ms. Weston testified that while she only saw the silhouette of a bald man driving the vehicle as it approached, she recognized it as Defendant's vehicle that she had seen him drive many times over the course of the thirteen years of knowing him. Ms. Weston also testified that before the night of the shooting, Defendant had asked her to hold some guns for him, and that she had seen Defendant with a 9 mm firearm when he gave it to her for safekeeping.

{29}    Ms. Granados testified that on the night of the shooting, Defendant showed up at her residence unannounced shortly after 10:00 p.m., and told her that "he had shot at two people." At the time, Ms. Granados thought this was a joke because she was not aware of what had occurred at the house earlier that night. However, a few

days after the shooting, Defendant called Ms. Granados from jail, seeking information about what she had told the police, insinuated she had told police he was the shooter and called her a "rat."

**{30}** Detective Hunter testified that when he stopped Defendant on the night of the shooting, he shined his flashlight into Defendant's vehicle and saw two shell casings. These shell casings were later determined to belong to a 9 mm firearm.

**{31}** Patrol Sergeant Slater of the Otero County Sheriff's Department testified that he responded to reports of a shooting in La Luz on November 10, 2014, and it was his duty to collect and photograph evidence at the crime scene. At the crime scene, Sergeant Slater documented three 9 mm shell casings on the ground in the street in front of the house.

**{32}** The State's expert witness, Mr. Streine, a Forensic Scientist at the New Mexico Department of Public Safety's Forensic Lab, testified that the lab accepted five shell casings for ballistics testing. The State requested that five shell casings be compared to each other and a firearm to determine if they were shot from the same firearm. Mr. Streine compared one 9 mm shell casing found at the scene of the shooting and four 9 mm shell casings found in the vehicle that Defendant was driving at the time he was arrested. After examining the shell casings, Mr. Streine determined that all five casings were fired from the same firearm.

16

{33} This evidence more than adequately establishes Defendant's identity as the shooter. Defendant's contention that his convictions are not supported by sufficient evidence because the eyewitness testimony is "unreliable" is unavailing. The jury was free to accept or reject the eyewitness accounts. *See State v. McAfee*, 1967-NMSC-139, ¶ 8, 78 N.M. 108, 428 P.2d 647 ("It was for the jury to determine the weight to be given [to] the testimony, and determine the credibility of the witnesses." (citations omitted)). We are therefore satisfied that sufficient evidence was presented to allow the jury to conclude that Defendant was the shooter.

## V.   The State Did Not Commit a *Brady* Violation

{34} Defendant argues that the State committed a *Brady* violation by failing to send GSR swabs collected from Defendant's person and vehicle after the shooting to the forensic lab for testing. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring the prosecution to disclose evidence in its possession that could exculpate a criminal defendant); *see generally Case v. Hatch*, 2008-NMSC-024, ¶¶ 44-47, 144 N.M. 20, 183 P.3d 905 (discussing the standards applicable to a *Brady* claim in New Mexico). Defendant maintains that had the GSR swabs been tested, the results would have shown that he was not the shooter, and the State's failure to share these results resulted in the suppression of material evidence. We disagree.

{35} Defendant argues that this issue was preserved in his motion for a new trial. However, New Mexico law provides that a motion for a new trial is not sufficient to

preserve an issue that was not otherwise raised during trial proceedings. *See State v. Pacheco*, 2007-NMSC-009, ¶¶ 7-8, 141 N.M. 340, 155 P.3d 745 (determining that because the defendant raised his claim of error for the first time in a motion for a new trial, the claim was not properly preserved for appellate review); *see also* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Because Defendant failed to make a timely objection in the district court, the issue is not preserved for our consideration absent a showing of fundamental error. *See* Rule 12-321(B)(2)(c) (providing an exception to the preservation rule for questions involving fundamental error); *see also State v. Stevenson*, 2020-NMCA-005, ¶ 18, 455 P.3d 890 (holding that improperly preserved *Brady* issues should be analyzed for fundamental error). We hold that no fundamental error occurred.

{36}     To establish a *Brady* violation a defendant must show: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Stevenson*, 2020-NMCA-005, ¶ 18 (internal quotation marks and citation omitted). Defendant's argument fails to meet the first prong of the test—whether the prosecution suppressed evidence—because he was aware of the GSR swabs existence as he listed them in his disclosure of evidence filed before trial. The failure to satisfy the first *Brady* requirement alone justifies our conclusion that no fundamental error occurred. *See Stevenson*, 2020-NMCA-005,

18

¶ 19. As such, we hold that the State did not commit a *Brady* violation by failing to send GSR swabs to the lab for testing.

## VI. The District Court Did Not Abuse Its Discretion by Denying Defendant's Motion for a New Trial

{37}    Finally, Defendant challenges the district court's denial of his motion for a new trial. Defendant claims that the district court should have granted his motion based on the following three grounds: (1) the State discussed facts not in evidence during its closing; (2) newly discovered evidence; and (3) the discovery of a new witness who would have testified favorably for the defense. We are not persuaded.

## A.    Facts Not in Evidence

{38}    We hold that the district court exercised sound discretion in denying Defendant's motion for a new trial. Defendant first contends that the State made an incorrect statement to the jury during its closing argument. However, in his briefing, Defendant does not identify or cite to the statement made by the State that was incorrect. *See* Rule 12-318(A)(4) NMRA ("The brief in chief of the appellant . . . shall contain . . . an argument . . . with citations to authorities, record proper, transcripts of proceedings, or exhibits relied on."). Therefore, we are unable to meaningfully review Defendant's contention that the State made an improper statement during closing and decline to address this matter further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not

review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

## B.   Newly Discovered Evidence and Witness

{39}   A motion for new trial based on newly discovered evidence may be made within two years of final judgment. Rule 5-614(C) NMRA. Generally, "[a]n appellate court will not disturb the district court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Jackson*, 2018-NMCA-066, ¶ 32, 429 P.3d 674 (alteration, internal quotation marks, and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Lymon*, 2021-NMSC-021, ¶ 12, 488 P.3d 610 (internal quotation marks and citation omitted).

{40}   A motion for new trial on the grounds of newly discovered evidence is only to be granted when the newly discovered evidence meets six requirements:

> 1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory.

*State v. Garcia*, 2005-NMSC-038, ¶ 8, 138 N.M. 659, 125 P.3d 638 (internal quotation marks and citation omitted). Defendant's contention that the district court should have granted his motion for a new trial based on newly discovered evidence

20

fails because the additional shell casings and witness upon which Defendant bases his argument were known prior to his trial. Therefore, we are unpersuaded that the district court erred in denying Defendant's motion for a new trial.

**CONCLUSION**

{41}    We vacate Defendant's conviction for shooting at or from a motor vehicle resulting in great bodily harm to Mr. Maynez (Count 4). We reinstate Defendant's previously vacated conviction for attempted first degree murder (Count 1) of Mr. Maynez. We reject Defendant's remaining claims of error and remand to the district court for entry of an amended judgment and sentence in conformity with this opinion.

{42}    **IT IS SO ORDERED.**


_____
**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**


_____
**KRISTINA BOGARDUS, Judge**


_____
**GERALD E. BACA, Judge**