This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37337**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ROY BROWN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Roy Brown appeals his convictions for two counts of criminal sexual penetration (CSP); aggravated battery; burglary; and resisting, evading, or obstructing an officer. Defendant argues that the district court (1) erred in failing to suppress Victim's identification of Defendant; (2) abused its discretion in admitting DNA evidence; (3) failed to dismiss the case for prosecutorial misconduct; (4) erred in failing to vacate one of his CSP convictions on double jeopardy grounds; and (5) improperly used

Defendant's prior felony conviction to enhance his sentence as a habitual offender. Defendant also argues that cumulative error requires reversal. We affirm.

**BACKGROUND**

**{2}** In June 2016, Victim awoke to an attacker she later identified as Defendant "smothering [her] with a cushion" and hitting her with a glass liquor bottle. Victim was unable to fight Defendant off, who penetrated her vaginally with his penis, unsuccessfully tried to penetrate her vagina with the bottle, and "put his fingers in [her] anus." Victim continued to struggle and tried to pull Defendant's hair, but he did not have any. At one point, Victim told Defendant that she had to use the bathroom, and Defendant followed her. While in the bathroom, Victim told Defendant that someone was outside, which confused him. Victim then managed to escape, and as she fled, she heard Defendant "yelling . . . something in English," which she did not understand, as she only spoke Spanish. When Victim turned back to look at Defendant, a passing car with its headlights on drove by, allowing her to see Defendant, "the expression on his face," and that he was a tall man wearing a tank top and boxer shorts. Victim ran to a nearby house and called the police.

**{3}** Sergeant Mark Morrison arrived on scene and spoke with Victim, who provided a physical description of Defendant and stated she may have scratched him during the attack. Sergeant Morrison testified that less than five minutes later, Deputy Chris McCasland reported on the radio that they had found Defendant—who matched the description given by Victim. Deputy McCasland contacted Defendant outside Victim's trailer and observed Defendant to be "pretty intoxicated," "very confrontational," without pants, and with fresh scratches on his legs and arm. Victim was shown a photograph of Defendant and positively identified him as her attacker. Defendant was subsequently arrested.

**{4}** At the conclusion of the trial, Defendant was convicted. The district court sentenced Defendant as a habitual offender based on two prior convictions. Defendant now appeals.

**DISCUSSION**

**I.      Motion to Suppress Identification of Defendant**

**{5}** Defendant argues that Victim's in-court identification was tainted by the unduly suggestive "cell phone photograph" and should have been suppressed. As we explain below, we disagree.

**{6}** At the crime scene, a single photograph of Defendant was shown to Victim, and she positively identified him as her attacker. Defendant filed a motion to suppress Victim's on-scene identification and subsequent in-court identification because the proper procedure was not followed by the police and the photo identification was unreliable. At the suppression hearing, the district court found that, under the totality of

the circumstances, the suggestiveness of Defendant's identification did not "give rise to the likelihood of an irreparable misidentification."

**{7}** Our review of the district court's ruling on a motion to suppress is "a mixed question of fact and law." *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted). While we "defer to the [district] court's purely factual assessment," we are not bound by the district court's "application of law to the facts." *State v. Johnson*, 2004-NMCA-058, ¶ 12, 135 N.M. 567, 92 P.3d 13. "In reviewing the admissibility of showup identification, we analyze whether the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and, if so, whether the identification is nonetheless reliable under the totality of the circumstances." *Id.* ¶ 13. To assess the reliability of a witness's identification, "courts weigh the corrupting effect of the suggestive identification" against five factors. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 20, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). Those factors are (1) the witness's opportunity to view the attacker at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's pre-identification description, (4) the certainty of the witness, and (5) the time elapsed between the crime and the identification. *State v. Jacobs*, 2000-NMSC-026, ¶ 30, 129 N.M. 448, 10 P.3d 127.

**{8}** Here, Defendant correctly points out that the use of a single photo was akin to a showup identification. A showup identification occurs when a witness is asked if they can identify a suspect that is already in custody of the police and still near the scene of the crime. *See State v. Padilla*, 1996-NMCA-072, ¶ 16, 122 N.M. 92, 920 P.2d 1046. "Showup identifications are inherently suggestive, and their use should be avoided." *Johnson*, 2004-NMCA-058, ¶ 14 (internal quotation marks and citation omitted). We agree with Defendant that the police's use of only one photograph, shown to Victim to "see if [it] was possibly the subject," was suggestive. However, even if it was suggestive for the deputy to show Victim a single photograph of Defendant, we nevertheless conclude Victim's identification of Defendant was reliable under the totality of the circumstances.[1]

**{9}** First, Victim provided an accurate description of Defendant because she had an ample opportunity to view him at the time of the crime. Victim saw Defendant when she fled and was able to give a detailed pre-identification description of Defendant's eyes, the expressions on his face, his height, build, and the fact that he was wearing only his underwear. Additionally, Victim described Defendant as "English-speaking, ha[ving] a . . . shaved head and . . . wearing a white . . . wife beater." The officers located Defendant standing outside of Victim's trailer, wearing a "light-grey wife-beater," "no pants," fresh scratches on his legs and arm with "very short cut and balding" hair. There was no evidence that Victim was inebriated or otherwise impaired during or after the

---

[1]Defendant argues that Victim's identification is unreliable because she described her attacker as a "white male." However, Defendant's only citation to the record is to his opening statement at the suppression hearing. *See State v. Pacheco*, 2017-NMCA-014, ¶ 8, 388 P.3d 307 ("[S]tatements of counsel are not evidence." (internal quotation marks, and citation omitted)). Therefore, we do not address this argument further.

attack; thus, Victim's degree of attention weighed in favor of admitting her identification of Defendant. *Johnson*, 2004-NMCA-058, ¶ 20 (noting that without evidence that the "witness['s] degree of attention was impaired," this factor "weighs toward reliability"). Finally, only a short period of time had elapsed between the crime and Victim's identification of Defendant, which occurred the same night she was attacked and less than five minutes after Victim provided Sergeant Morrison a detailed description of Defendant. Victim also immediately identified Defendant after being shown the photo by Sergeant Morrison. Given the totality of the circumstances, we hold that the district court did not err in admitting Victim's identification of Defendant. *See Padilla*, 1996-NMCA-072, ¶ 20 (holding that "suggestiveness alone may be inconsequential" in situations where a witness is the victim of an assault).

## II.    Admission of DNA Evidence

**{10}**    Defendant argues the district court abused its discretion by admitting DNA evidence at trial. Defendant specifically contends that the State's expert's testing methodology "was unreliable" and her "methods of collection and analysis violated best practices . . . within the scientific community[.]" The State argues that the issue was not preserved below. Defendant does not appear to rebut the State's assertion in his reply brief, merely referencing the State's DNA Laboratory Report as the evidence that should have been excluded. Based on our review of the record, we agree with the State.

**{11}**    While Defendant filed a pretrial *Daubert* motion to exclude the State's DNA expert, he withdrew the motion three days later. Defendant does not indicate where the issue was preserved, nor does Defendant ask us to review for plain error.[2] *See State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829 (holding that the appellate court will not search the record to find whether an issue was preserved where the defendant failed to refer the court to the record). We therefore decline to address this issue. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked."); *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the [district] court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)).

## III.    Prosecutorial Misconduct

**{12}**    Defendant contends that multiple instances of prosecutorial misconduct required dismissal of his charges by the district court. Below, Defendant filed motions to dismiss based on alleged prosecutorial misconduct which were denied by the district court. Specifically, Defendant argues that the State's prosecutorial misconduct warranted

---

2Defendant has not claimed plain error as a result of the admission of the DNA evidence. Application of the plain error doctrine by an appellate court constitutes an "exercise of remedial discretion[, and] . . . [w]e decline to address the issue of plain error" when the defendant has altogether failed to develop an argument or brief it. *State v. Abril*, 2003-NMCA-111, ¶ 14, 134 N.M. 326, 76 P.3d 644 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Torres*, 2012-NMCA-026, ¶ 38, 272 P.3d 689.

dismissal because the State (1) withheld exculpatory evidence, (2) knowingly elicited false testimony at trial, and (3) intimidated Defendant's witness. The State contends that none of the alleged instances of prosecutorial misconduct resulted in prejudice to Defendant. We address each alleged instance of prosecutorial misconduct in turn.

**{13}** Because Defendant's claims of prosecutorial misconduct were preserved below, "we review the claim of error by determining whether the trial court's ruling on the claim was an abuse of discretion." *State v. Wildgrube*, 2003-NMCA-108, ¶ 20, 134 N.M. 262, 75 P.3d 862. We evaluate whether the district court abused its discretion "by overruling the defendant's objection to the challenged conduct, or by otherwise failing to control the conduct of counsel during trial." *State v. Loya*, 2011-NMCA-077, ¶ 13, 150 N.M. 373, 258 P.3d 1165 (internal quotation marks and citation omitted).

## A.      Late Disclosure of Exculpatory Evidence

**{14}** We first determine whether the State violated Defendant's due process right by its untimely disclosure of the DNA lab report. The state violates a defendant's due process rights by withholding evidence favorable to the defense. *State v. Balenquah*, 2009-NMCA-055, ¶ 12, 146 N.M. 267, 208 P.3d 912. To prove his right to due process was violated the defendant must show (1) the evidence was withheld by the prosecution, (2) the evidence was favorable to the defendant, and (3) the evidence was material to his defense. *Id*. Importantly, the defendant is only "entitled to a retrial where the prosecution suppressed, throughout the whole trial, exculpatory evidence material to the guilt or punishment of the defendant." *State v. Miera*, 2018-NMCA-020, ¶ 26, 413 P.3d 491 (emphasis, internal quotation marks, and citation omitted).

**{15}** Defendant concedes that he was provided the DNA evidence prior to trial, despite the late disclosure. The State submitted multiple samples of bodily fluids recovered from Defendant's clothing, the liquor bottle, and Victim's body for DNA testing. After receiving the report regarding the DNA on November 7, 2016, the State sent the results to the Roosevelt County Sheriff's Office but inadvertently failed to disclose the report to Defendant until April 4, 2017. However, it is undisputed that the State disclosed the DNA evidence to Defendant five months prior to trial. *See Balenquah*, 2009-NMCA-055, ¶¶ 14-15 (concluding that evidence that was made available to the defendant on the second day of trial was not considered "suppressed" by the state). Because the State provided the DNA evidence to Defendant, we need not address whether the evidence was favorable and material to Defendant. *See id*. ¶ 13 (explaining that all three prongs must be met to establish a right to due process violation). Thus, the district court did not abuse its discretion by denying Defendant's motion for a mistrial.

## B.      Deputy's False Statement During Interrogation of Defendant

**{16}** Defendant argues the district court abused its discretion in denying his motion for a mistrial because during trial the prosecutor knowingly elicited false testimony from Deputy Brian Encinias. The district court is in the "best position to evaluate the

significance of any alleged prosecutorial errors." *State v. Trujillo*, 2002-NMSC-005, ¶ 49, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). While Defendant is entitled to a fair trial, judges retain "wide discretion in controlling the proceedings before them and a defendant is not entitled to a perfect trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted).

**{17}**  Defendant's argument that the deputy falsely told the jury, under oath, of incriminating conduct by Defendant is unsupported by the record in this case. The jury saw a video of Deputy Encinias interrogating Defendant during which the deputy falsely stated that Defendant's friend had told the deputy that Defendant left Victim's house, returned without his clothes on, and was out of breath. Before any further testimony was elicited from the deputy, Defendant moved for a mistrial, arguing the jury would be "unable to reach a fair verdict." The district court denied Defendant's motion and instead instructed the jury that interrogators are "allowed to state things that are not true during an interview." Deputy Encinias then testified that the statement was "not true" and that it was merely an "interview technique."

**{18}**  Defendant does not explain how the State "deliberate[ly] use[d] false evidence" to obtain a conviction. *See State v. Hogervorst*, 1975-NMCA-028, ¶ 6, 87 N.M. 458, 535 P.2d 1084. The contested statement made by Deputy Encinias was not testimony. Instead, it was a statement used as an "interview technique" during an interrogation. More importantly, Deputy Encinias testified before the jury that the statement made in the video was false. *See State v. Garvin*, 2005-NMCA-107, ¶ 29, 138 N.M. 164, 117 P.3d 970 (stating that the state has a "duty not to misstate the facts," and must clarify if a misstatement of fact occurs). Without any showing that the district court's limiting instruction and the State's clarification of Deputy Encinias's testimony is "clearly against the logic and the effect of the facts and circumstances of the case," we cannot conclude that the denial of Defendant's motion for a mistrial was an abuse of discretion. *See State v. Sutphin*, 1988-NMSC-031, ¶ 18, 107 N.M. 126, 753 P.2d 1314 ("[T]he power to declare a mistrial should be exercised with the greatest caution" and requires a showing "of a clearly erroneous decision." (internal quotation marks and citation omitted)); *see also State v. Gallegos*, 2009-NMSC-017, ¶ 29, 146 N.M. 88, 206 P.3d 993 (noting that district courts have discretion to use "a variety of remedies" in order to cure any possible prejudice that may occur in the minds of the jury).

## C.    Witness Intimidation

**{19}**  Lastly, Defendant argues the State committed prosecutorial misconduct when it intimidated his investigator, in violation of NMSA 1978, Section 30-24-3(A) (1997). Section 30-24-3(A)(2) defines "intimidation of a witness" as "intimidating or threatening any witness or person likely to become a witness . . . for the purpose of preventing such individual from testifying to any fact, to abstain from testifying or to testify falsely[.]" Specifically, Defendant contends the State provided the defense investigator's ex-husband with her phone number, which, placed the investigator "in a state of physical fear and intimidation to the degree that she was unable to assist defense counsel on the

evening before her testimony or to concentrate during her testimony the next day." The State responds that there was no evidence that anyone acting on behalf of the District Attorney's office intended to intimidate the defense investigator. The State points out that during the hearing on Defendant's motion for a mistrial, each of the State's investigators testified that they did not give the defense investigator's phone number to her ex-husband and made no attempt to threaten or intimidate her and thus the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

**{20}** We observe that Defendant's investigator testified on Defendant's behalf and that Defendant fails to point to any evidence demonstrating that the State provided his investigator's ex-husband with her phone number, the basis of his prosecutorial misconduct claim. Nor does Defendant develop an argument as to why the State's purportedly intimidating actions affected his investigator's testimony or what facts were not elicited from the investigator as a result of the alleged intimidation. *See State v. Fernandez*, 1994-NMCA-056, ¶ 41, 117 N.M. 673, 875 P.2d 1104 (stating that to show intimidation of a witness, there must be an indication that the state's actions prevented the witness "from testifying to any fact" (internal quotation marks omitted)). Thus, we decline to address this undeveloped argument. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (observing that appellate courts are under no obligation to review undeveloped arguments).

## IV.    Double Jeopardy

**{21}** Defendant was convicted of two separate counts of CSP: one conviction for penetrating Victim vaginally with his penis and another for penetrating Victim anally with his fingers. Defendant argues that one of the CSP convictions should be vacated because the two penetrations were close in time, with the same intent, in the same location, and without any intervening events. The State argues there is no double jeopardy violation because Defendant penetrated two different orifices.

**{22}** "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Defendant's claim is a unit of prosecution double jeopardy claim, which occurs when "an individual is convicted of multiple violations of the same criminal statute." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Our Supreme Court has observed that the language of the statute governing CSP convictions, NMSA 1978, § 30-9-11 (2009), "does not indicate unambiguously whether the [L]egislature intended . . . to create a separate offense for each penetration occurring during a continuous sexual assault." *Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624. Therefore, "we determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Bernal*, 2006-NMSC-050, ¶ 14 (internal quotation marks and citation omitted). We begin by considering the following factors in determining whether there were sufficient indicia of distinctness between the two penetrations:

(1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) [the] defendant's intent as evidenced by his conduct and utterances; and (6) number of victims[.] . . . Except for penetrations of separate orifices with the same object, none of these factors alone is a panacea[.]

*State v. McClendon*, 2001-NMSC-023, ¶ 6, 130 N.M. 551, 28 P.3d 1092 (internal quotation marks and citations omitted); *see also State v. Wilson*, 1993-NMCA-074, ¶ 9, 117 N.M. 11, 868 P.2d 656 (stating that "penetrations of separate orifices with the same object constitute separate offenses").

**{23}**    Applying these factors, we agree with Defendant that the two penetrations were close in time, in the same location, and were not accompanied with any intervening events between the two penetrations given Victim's testimony that she was lying on a couch during both penetrations, that no intervening events occurred between the two penetrations, and that she was unsure how long the struggle lasted. However, Defendant penetrated two separate orifices: Victim's anus and vagina. Victim testified Defendant "penetrat[ed] my vagina" and "raped me . . . [with] his penis." Victim also testified that Defendant put his fingers in Victim's anus during the struggle. Defendant demonstrated his intent to separately penetrate Victim's anus because he attempted to rape her anally throughout the entire struggle. Because "serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses," we conclude that the separate penetrations were sufficiently distinct to constitute two separate crimes and as such, there was no double jeopardy violation. *See Herron*, 1991-NMSC-012, ¶ 15; *see also Wilson*, 1993-NMCA-074, ¶ 9 ("[T]he acts of anal intercourse, sexual intercourse, and at least one instance of fellatio constitute separate offenses under *Herron*.").

## V.    Use of Prior Conviction for Habitual Offender Enhancement

**{24}**    Defendant contends that the district court erred in denying his motion to exclude his prior convictions for sentencing purposes. He argues that the evidence used by the State of his conviction for burglary in 2010 was unreliable given his mother's testimony that the booking photo from the 2010 conviction was of Defendant's brother. We conclude there was substantial evidence to support the district court's ruling.

**{25}**    "We review the sufficiency of the evidence presented in habitual offender proceedings under a substantial evidence standard of review." *State v. Bailey*, 2008-NMCA-084, ¶ 23, 144 N.M. 279, 186 P.3d 908. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 66

(internal quotation marks and citation omitted). The state must prove the following elements to establish a defendant is a habitual offender: "(1) [the] defendant must be the same person, (2) convicted of the prior felony, and (3) less than ten years have passed since the defendant completed serving his or her sentence, probation or parole for the conviction." *Bailey*, 2008-NMCA-084, ¶ 23 (internal quotation marks and citation omitted). The State has the burden to prove these elements by a preponderance of the evidence. *See State v. Simmons*, 2006-NMSC-044, ¶ 10, 140 N.M. 311, 142 P.3d 899. Given Defendant's argument, we focus our analysis on the first element.

**{26}** In this case, the State presented evidence that during a plea colloquy for a burglary that occurred in 2010, Defendant admitted he was the person convicted. During the colloquy, Defendant also admitted having twin children, and the State established at the sentencing hearing in this case that Defendant was the only one among his siblings who had twin children. Further, Defendant's former probation officer testified that Defendant's brother's name was listed as an alias for Defendant. While it is true that Defendant presented conflicting testimony, "[w]e view the evidence in the light most favorable to the lower court's decision, resolve all conflicts and indulge all permissible inferences to uphold that decision, and disregard all evidence and inferences to the contrary." *State v. Trujillo*, 2009-NMCA-128, ¶ 13, 147 N.M. 334, 222 P.3d 1040. Accordingly, we hold that there was substantial evidence to support the district court's finding that Defendant was the person who was convicted of commercial burglary in 2010.

## VI.    Cumulative Error

**{27}** Lastly, Defendant argues that the alleged errors, taken together, constitute cumulative error, which "requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (internal quotation marks and citation omitted). However, as Defendant failed to show that the district court erred, we hold there was no cumulative error. *See id.* ("Where there is no error to accumulate, there can be no cumulative error." (alteration, internal quotation marks, and citation omitted)).

## CONCLUSION

**{28}** For the foregoing reasons, we affirm.

**{29}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**